PROVIDENCE GAS BURNER CO. *vs.* CALEB H. BARNEY.

A. the treasurer of a Rhode Island company and agent of a Massachusetts company, and B. the home agent of the latter company, arranged to transfer accounts so that a debt of A. to the Massachusetts company and one of B. to the Rhode Island company should be cancelled by B. paying the excess in cash.   Before this arrangement was consummated A. received notice that B.'s agency was revoked, and B. never completed the arrangement by paying.

*Held,* that the Rhode Island company could not, by virtue of this arrangement, maintain a suit against A. for the amount of B.'s debt to it less the amount of A.'s debt to the Massachusetts company.

Subsequently A. was succeeded as treasurer by H., who compromised with B. for twenty per cent. of the amount B. was to pay A. in cash.   Before the compromise H. received a letter from A. in which A. said, " Although I think he (B.) has something charged twice, still as it is not far out, and you had better get all you can soon, I would accept B.'s figures; that is, that he owes the Rhode Island company . . . and get his note for that."

*Held,* that the letter and compromise gave to the Rhode Island company no cause of action against A.

EXCEPTIONS to the Court of Common Pleas.

*October* 14, 1882.   DURFEE, C. J.   The facts of this case are briefly as follows, to wit :  The defendant was the treasurer of the plaintiff company from 1875 to 1880.   He was at the same time the Rhode Island agent of a Massachusetts company engaged in the manufacture of gas machines.   In 1879 he owed the latter company $315.29 for a machine bought of them through Andrew G. Paul, their Boston agent.   Paul owed the plaintiff company $500, for the payment of which the defendant had dunned him

without effect.  February 1, 1880, the defendant and Paul met in Providence and arranged for a transfer of accounts.  In pursuance of the arrangement, the defendant gave Paul a receipt signed by him as treasurer of the plaintiff company, as follows, to wit : " Received of A. G. Paul $315.29 by transfer of accounts." He received a similar receipt from Paul, who also promised to send his check for the balance of his indebtedness over $315.29. They then separated, and immediately afterwards, before the defendant had taken any step to carry their arrangement into effect, he got a letter from the Massachusetts company, dated January 26, 1880, notifying him that Paul was no longer in their employ, and directing him to make all remittances payable to their order. A day or two later he saw Paul in Boston and told him he could do nothing further until the matter was straightened with the Massachusetts company.  Paul said he would make everything right, but never did so and never sent his check for balance according to promise.  The defendant never gave Paul credit for, nor charged himself with, the price of the machines on the plaintiff company's books.  On May 27, 1880, he was succeeded in his office of treasurer by H. H. Hoag, to whom he communicated what had taken place between himself and Paul, but neither made any promise nor authorized the entry of any charge against him.  Hoag tried to get a settlement with Paul, and finally, in September, 1880, compromised with him by taking his notes for twenty per cent. of $206.41, being the balance due from Paul deducting the price of the machine.  The compromise was effected after the receipt of a letter from the defendant, under date of August 3, 1880, in the words following, to wit :

" I have had several unsuccessful hunts for my books of the Gas Machine business, which were packed away somewhere when I removed to my present residence, but have not been able to lay hands on them.  Although I think he has something charged twice, still as it is not far out, and you had better get all you can soon, I would accept Paul's figures; that is, that he owes the Providence Gas Burner Company $206 and some cents, and get his note for that."

The letter was written after talks with Hoag about the matter. On September 30, 1880, Paul was credited with $315.29, and

on December 1, 1880, the defendant was charged with the same amount on the plaintiff company's books. This action was commenced in the Court of Common Pleas May 16, 1881. It was there tried to the court, jury trial being waived, and judgment was rendered for the plaintiff. In the trial the defendant requested several rulings, some of which the court either refused to grant or granted with modifications. The case comes here on exceptions for error in the rulings.

With the view which we entertain we do not think it necessary to state the rulings specifically here. The only grounds on which the plaintiff company can claim to recover are : *first*, the arrangement of February 1, 1880, between the defendant and Paul; and, *second*, the letter from the defendant of August 3, 1880, and the compromise with Paul which followed it. We think the arrangement of February 1 was ineffectual to charge the defendant with any liability to the plaintiff company. It was an arrangement between the defendant and Paul, in which what was to be done by the one was the consideration for what was to be done by the other; and, therefore, the defendant could not be held on it without proof that Paul had performed it on his part, and the proof was the contrary. For anything that appears, the Massachusetts company has always looked and still looks to the defendant for the $315.29. He is not chargeable, then, unless he is chargeable by virtue of the letter and the compromise. But he is not in our opinion chargeable by virtue of the letter and the compromise, unless the letter amounted to a promise to become chargeable if the plaintiff company would accede to compromise. Did the letter amount to such a promise ? The court below ruled that it did not contain an express promise to that effect. We think this ruling was right. Did it contain such a promise by implication from what is expressed ? We do not think such a promise ought to be inferred, none being expressed, unless the inference is so clear as to be almost irresistible ; for it is not apparent that any benefit could accrue to the defendant from the promise, while it would load him with an onerous liability. To our minds, regarding only the language of the letter, the inference is not clear, and we do not think it is materially aided by the circumstances, construing the letter in the light of them. The defendant certainly does not

appear to have been under any such obligation to Paul, who had deceived him, that he should desire to pay a part of his debt for him. Neither do we discover in the circumstances any reason why he should undertake, for the sake of the company, to pay Paul's debt to it. He had done his best, when treasurer, to secure the debt for the company and failed. He owed the company no further service in regard to it. He says that all he meant by his letter was to advise the company to accept Paul's terms, because it was doubtful if the company could get much, if anything, out of him if it refused them. This testimony is worth nothing as testimony, but it seems to us, under the circumstances, to give a reasonable interpretation to the letter. Perhaps it may be supposed that the defendant could incur the liability without any promise, express or implied, by authorizing the company to charge him on its books, the authorization being inferable from the circumstances. But such a charge, if gratuitously authorized, could avail only by estoppel, and here there was no estoppel because there was no misrepresentation. On the other hand, if it be claimed that the charge was authorized for a valid consideration, then the question is, what was the consideration, and the only answer is, the compromise, which brings us right back again to the letter, which is the only matter that significantly connects the defendant with the compromise. And again, to say that the defendant authorized the charge in consideration of the compromise, is tantamount to saying that he promised or agreed to pay the charge in consideration of the compromise, and so again raises the question whether the letter imports any such promise or agreement, a question which we have already answered in the negative.

Our conclusion is that the rulings, so far as inconsistent with the views above expressed, were erroneous. To that extent, therefore, the exceptions are sustained, and the case remitted for new trial.            *Exceptions sustained.*

*John F. Tobey*, for plaintiff.

*Edwin Metcalf, Lorin M. Cook & Cyrus M. Van Slyck*, for defendant.